UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-60075-BLOOM/Valle

ARIC MCINTIRE, *et al.*,

    Plaintiffs,

v.

STEVEN M. MARIANO, *et al.*,

    Defendants.

_____/

**ORDER ON MOTION TO INTERVENE AND TRANSFER**

**THIS CAUSE** is before the Court upon Intervenors ODS Capital LLC, Barry A. Smith, and Sunil Shah (collectively referred to as the "Intervenors") Motion to Intervene and Transfer (the "Motion"), ECF No. [50]. The Court has reviewed the Motion, all supporting and opposing submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is granted.

I. **BACKGROUND**

On March 14, 2017, Plaintiff Anthony L. Gingello, filed a class action on behalf of himself and others similarly situated, *Gingello v. Patriot National, Inc.*, Case No. 1:17-cv-01866 (the Gingello Action"), in the Southern District of New York. ECF No. [50], at 3. The Gingello Action alleged claims against Defendants Patriot National, Inc., Steven M. Mariano and Thomas Shields under Sections 10(b) and 20(a) of the Exchange Act on behalf of a class of persons and entities that purchased Patriot National securities between August 15, 2016, and March 3, 2017. *Id.* at 5. The Gingello Action alleged that the defendants failed to disclose that Patriot National was being run primarily for Defendant Mariano's benefit rather than for the benefit of shareholders. *Id.* at 5.

Specifically, a "special committee" of Patriot National's Board of Directors rejected a buyout offer from Ebix, Inc. ("Ebix"), even though it was beneficial to shareholders, because the offer cut against Defendant Mariano's personal interests. *Id.* On August 1, 2016, Patriot National announced that it agreed to consider an "enhanced offer" from Ebix. *Id.* On August 15, 2016, Patriot National represented that "a special committee of independent directors" was "continuing to explore other strategic alternatives" to maximize shareholder value. *Id.* at 5-6. On November 8, 2016, Patriot National announced that it had rejected a $475 million offer from Ebix because it was "not the best alternative to maximize value for Patriot National's shareholders." *Id.* On March 3, 2017, however, Patriot National disclosed that the true reason it rejected the Ebix offer was because it was not in the best interest of Defendant Mariano and his business, Guarantee Insurance Group ("GIG"). *Id.* Patriot National then announced that it entered into an agreement with GIG and Defendant Mariano regarding service agreements between Patriot National and GIG's wholly-owned subsidiary, Guarantee Insurance Company ("GIC"). *Id.* In the agreement, Patriot National agreed to pay GIG $30 million. *Id.* On March 6, 2017, Patriot National investors were injured when Patriot National's stock price fell to 16.4%, on unusually heavy trading volume, to close at $3.67 per share on March 6, 2017. *Id.*

The same day that the Gingello Action was filed, counsel for Gingello published a notice on *Business Wire*, announcing that a securities class action had been initiated against the defendants. *Id.* at 3. Pursuant to the Private Securities Litigation Reform Act ("PSLRA") the lead plaintiff's motion deadline was set in the Gingello Action for May 15, 2017. *Id.* Several members of the purported class filed motions requesting appointment as lead plaintiff pursuant to the PSLRA. *Id.* at 3-4.

On August 11, 2017, counsel for the Plaintiffs in the instant action filed a Second Amended Complaint in a derivative action on behalf of Patriot National, with Plaintiffs McIntire and Wasik as Plaintiffs, against Defendants Mariano and Shields in the Delaware Court of Chancery, *Wasik v. Mariano*, Case No. 12953-VCL, (the "Derivative Action"). *Id.* at 4.

On September 20, 2017, Plaintiff Adam Kayce ("Kayce") filed another securities fraud class action complaint in the Southern District of New York, *Kayce v. Patriot National, Inc., et al.*, No. 17-cv-07164 (the "Kayce Action"). *Id.* at 4. The Kayce complaint asserted claims on behalf of investors who purchased shares of Patriot National during the class period of March 3, 2016 through November 14, 2016, and asserted claims against the defendants for violations of federal securities laws. *Id.* at 6. On October 12, 2017, the Court consolidated the Kayce Action with the Gingello Action, designating the Gingello Action as the lead case. *Id.*

On November 28, 2017, Patriot National announced an anticipated Chapter 11 filing with a plan of reorganization as part of a restructuring support agreement with its lenders. *Id.* Accordingly, Patriot National's direct and indirect U.S.-based subsidiaries were to file voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code. *Id.*

On January 12, 2018, the Plaintiffs Aric McIntire and Henry Wasik (the "McIntire Plaintiffs") filed the instant action in the Southern District of Florida (the "McIntire Action"). ECF No. [1]. The McIntire Action alleged Defendants Mariano and Shields violated federal securities laws, and alleged claims on behalf of all purchasers of Patriot National common stock from January 15, 2015 to November 22, 2017. *See generally* ECF No. [1]. The Intervenors assert that, like the Gingello Action, the McIntire Action focuses in part on misconduct related to the Patriot's dealings with GIG and GIC, and alleges that Patriot National put Defendant Mariano's interests before the interests of its shareholders. ECF No. [50], at 7.

3

On January 30, 2018, Patriot National officially filed for bankruptcy. ECF No. [50], at 4. On February 2, 2018, the Court ordered the Gingello Action to be stayed pursuant to 11 U.S.C. § 362. *Id.* On February 25, 2018, the McIntire Plaintiffs submitted a letter to the judge presiding over the Gingello Action contending that the McIntire Plaintiffs had "the greatest financial interest in this case, have the only ability to bring all claims on behalf of the plaintiff class, and have shown the greatest vigor and interest in acting to protect the class's interest. There can be no question that the class is best represented by Wasik and McIntire rather than ODS or any other competing movant." ECF No. [51-1], at 7. On February 27, 2018, the Court temporarily lifted the stay to appoint the Intervenors as Co-Lead Plaintiffs in the Gingello Action. *Id.* This decision was reached despite receiving the objection on behalf of the McIntire Plaintiffs. ECF No. [50], at 4. After appointing the Intervenors as Co-Lead Plaintiffs, the stay was re-imposed "without prejudice to future requests to lift the stay following the Bankruptcy Court's ruling on Patriot's stay application and any mediation that may follow." *Id.* at 4-5.

On February, 28, 2018, the Bankruptcy Court entered an order staying related litigation (the "Bankruptcy Stay") and ordering mediation for parties whose claims may be covered by the existing D&O policies. *Id.* at 5. On March 6, 2018, an Order staying the case was issued in the McIntire Action. ECF No. [42]. The Bankruptcy Court ordered that the stay of this action continue through August 10, 2018, and mandated that all parties with an interest in claims that may be covered by the existing D&O policies continue to mediation. ECF No. [43-1], at 2.

On April 12, 2018, Intervenors, as Co-Lead Plaintiffs in the Gingello Action, submitted their confidential mediation statement in connection with the April 18-19, 2018 mediation (the "Mediation"). *Id.* at 7. In the mediation statement, the Intervenors claim they detailed preliminary damages estimates in connection with both Exchange Act claims and Securities Act

4

claims. *Id.* Exhibits to the mediation statement included the Southern District of New York's February 27, 2018 Order, appointing the Intervenors as Co-Lead Plaintiffs, and a draft of the Gingello proposed Amended Class Action Complaint. *Id.* The Intervenors represent that the proposed Amended Class Action Complaint combined the claims and allegations asserted by the Gingello Action and the Kayce Action, as well as those in the McIntire Action, and expanded the class period and added additional defendants. *Id.* The mediation resulted in an agreement in principle to settle the securities law claims on behalf of the entire class. *Id.*

On August 14, 2018, after the Bankruptcy Stay had expired, the McIntire Plaintiffs filed their Motion for Appointment as Lead Plaintiffs and Approval of Their Selection of Counsel, which is presently pending before this Court. *See* ECF No. [46]. On September 5, 2018, the same day Intervenors filed their Motion to Intervene and Transfer, counsel for the McIntire Plaintiffs filed "a duplicative case before a different judge in the Southern District of Florida," *Kaniki v. Mariano, et al.*, No. 18-cv-62097 (the "Kaniki Action"). ECF No. [60], at 1. Two days later, counsel for McIntire Plaintiffs moved for transfer and centralization of the consolidated Gingello Action pending in the Southern District of New York. The two Southern District of Florida cases, the Kaniki Action and the McIntire Action, were consolidated pursuant to 28 U.S.C. § 1407 in the United States Judicial Panel on Multidistrict Litigation ("JPML"), *In re Patriot National, Inc., Securities Litigation*, MDL No. 2870. *Id.* In their motion for transfer and centralization filed before the JPML (the "JPML Motion"), the McIntire Plaintiffs argued that transfer and centralization was appropriate because that "[t]he multiple proceedings in multiple venues has led to a disorganized and inefficient prosecution of the securities class claims." *Id.*; *In re Patriot National, Inc., Securities Litigation*, MDL No. 2870, ECF No. [56-1], at 2. The McIntire Plaintiffs argued in their JPML Motion that "[c]entralization is appropriate

where, as here, the various complaints present common factual allegations that will likely require duplicative motion practice and, if motions to dismiss are denied, discovery." ECF No. [60], at 2. The JPML Motion argued that the four class action complaints (the Gingello Action, the Kayce Action, the McIntire Action, and the Kaniki Action) raised similar factual and legal issues. *Id.* Additionally, the McIntire Plaintiffs argued that

> [c]entralization in a single district before a single judge will also serve 'the convenience of parties and witnesses.' All four securities class actions contain allegations regarding the operation of Patriot National during 2016 and 2017. Proof of these allegations will involve the same evidence and testimony from the same witnesses. Centralization will promote the just and efficient conduct of the actions because of the shared factual and legal issues. It will eliminate the need for the parties in the four securities class actions to make and respond to multiple motions and discovery requests, and prevent all parties and witnesses from being forced to travel across the country to appear in duplicative proceedings.

*Id.* On December 6, 2018, the JPML Motion was denied. *See In re Patriot National, Inc., Securities Litigation*, MDL No. 2870, ECF No. [27].

Should the relief requested by the Intervenors' Motion be granted by this Court, the Intervenors represent that in order to facilitate the resolution of this matter, they will file a consolidated amended complaint in the Gingello Action and adjourn certain defendants' (including Defendants Patriot National, Mariano, and Shields) obligation to respond to the consolidated amended complaint to allow them time to memorialize their agreement with Co-Lead Plaintiffs to settle the claims against them. ECF No. [50], at 7-8.

Intervenors now move to intervene in the above-styled action, arguing both that intervention is appropriate as a matter of right under federal rule of civil procedure 24(a) and permissively under federal rule of civil procedure 24(b). Intervenors also move to have the instant matter transferred to the Southern District of New York so that it may be consolidated there under the existing leadership structure that has previously been appointed by that court.

Intervenors argue, *inter alia*, that the McIntire Plaintiffs' Motion for Appointment as Lead Plaintiffs and Approval of Their Selection of Counsel, ECF No. [46], pending before this Court is an "attempted end run by lawyers that . . . already unsuccessfully objected to the appointment of lead plaintiff and lead counsel in the existing Gingello action." ECF No. [50], at 2.

II. **LEGAL STANDARD**

To intervene of right under Rule 24(a)(2), a party must establish that "(1) his application to intervene is timely;  2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302–03 (11th Cir. 2008) (citing *Chiles v. Thornburgh,* 865 F.2d 1197, 1213 (11th Cir. 1989) (citing *Athens Lumber Co. v. FEC,* 690 F.2d 1364, 1366 (11th Cir. 1982)).

The court may permit anyone to intervene permissively under Rule 24(b) where upon timely motion a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).  When exercising its discretion, a district court "can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion [to intervene]." *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 113 (1st Cir. 1999).

III. **ANALYSIS**

The Intervenors moves to intervene as a matter of right, pursuant to Federal Rule of Civil Procedure 24(a), or alternatively, under the standard for permissive intervention contained in Federal Rule of Civil Procedure 24(b).

### a. *Intervention by Right*

A district court, whether considering intervention as of right or by permission, must consider four factors in assessing timeliness, including:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest; (3) the extent of prejudice to the would-be intervenor if his petition is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*United States v. Jefferson Cty.*, 720 F.2d 1511, 1516 (11th Cir. 1983).

This case was initially filed on January 12, 2018. ECF No. [1]. Litigation was stayed for many months due to the Bankruptcy Stay. Once the Bankruptcy Stay expired, Plaintiffs filed their Motion for Appointment as Lead Plaintiffs and Approval of Their Selection of Counsel, ECF No. [46], on August 22, 2018. Intervenors filed their Motion to Intervene and Transfer on September 5, 2018, ECF No. [50]. Given that Intervenors filed the instant Motion within 14 days of the filing of the McIntire Plaintiffs' motion, ECF No. [46], it is clear to the Court that Intervenors filed the Motion within a reasonable time after knowing they had an interest in the above-styled action. The Court also notes that the Plaintiffs do not contest Intervenors' argument that the Motion was timely brought in their Response in Opposition to the Motion ("Opposition"). *See generally* ECF No. [59]. Accordingly, it appears that the Motion is timely.

Further, the Court finds that the existing parties would not be significantly prejudiced by intervention as neither substantial litigation nor settlement negotiations have taken place. *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood,* 254 Fed. App'x 769, 771 (11th Cir. 2007) (finding motion to intervene would practically undue a consent decree after twenty-two months of litigation and settlement negotiations). The record establishes that the majority of the

8

litigation that has taken place in the instant action has revolved around Intervenors' Motion. The Court finds that intervention would cause minimal, if any, prejudice to the existing parties. Nor does the Court find any unusual circumstances militating against intervention.

Next, Intervenors argue that they have an interest relating to the property or transaction that is the subject of the McIntire Action because 1) the McIntire Action alleges claims under Sections 10(b) and 20(a) of the Exchange Act against Mariano and Shields, 2) the McIntire Action class period encompasses the Gingello and Kayce consolidated class period, and 3) the McIntire Action alleges the same fundamental legal theory as the Gingello and Kayce Consolidated Action. ECF No. [50], at 9. In their Opposition, the McIntire Plaintiffs argue that the existing complaint in Gingello is much more limited than the Complaint filed in the instant action, in that it includes different claims under the Securities Act of 1933 and covers a much more limited class period. ECF No. [59], at 6. The McIntire Plaintiffs also argue that the discovery will be far more extensive in the instant action and that the legal theories alleged in the Complaint in this action are more comprehensive and developed than those alleged in the Gingello Action. *Id.*

The Court agrees with the Intervenors that the fact that the McIntire Action alleges claims under the Securities Act of 1933 in addition to claims under the Exchange Act does not preclude consolidation. In *In re Century Aluminum Co. Sec. Litig.*, the district court granted a party's motion to consolidate several cases and rejected a party's argument that although the cases arose out of the same facts as the other cases, they should not be consolidated because *the case alleged additional* claims under the Exchange Act. *In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001 SI, 2009 WL 2905962, at *2 (N.D. Cal. Sept. 8, 2009). In that case, the Court noted that while there were some legal differences between the Securities Act and Exchange Act claims,

9

the similarities were far greater because the claims in all the cases revolved around the same questions of fact, and that consolidation would promote the interests of efficiency.

Here, the Court also notes that the factual similarities, which both parties agree arise from the exact same set of facts, are far greater than the differences the McIntire Plaintiffs' attempt to highlight in their Opposition. Further, Intervenors represent that they will amend their complaint to include the additional securities claims asserted in the McIntire Action, in the event the Court grants their Motion. Accordingly, the Court is unpersuaded by the McIntire Plaintiffs' argument that the presence of the additional securities claims should prohibit the relief sought in the Intervenors' Motion.

Secondly, the McIntire Action class period (January 15, 2015 – November 22, 2017) encompasses the consolidated Gingello Action's class period (August 15, 2016 - November 14, 2016) and courts have previously consolidated cases where actions contain overlapping class periods. *Kadel v. Flood*, No. 07-61753-CIV, 2008 WL 11333160, at *1 (S.D. Fla. Mar. 18, 2008) (consolidating two class actions where the cases alleged violations of securities laws during overlapping time periods). Consolidation is often warranted where multiple securities fraud class actions "are based on the same 'public statements and reports.'" *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) (quoting *Lloyd v. Indus. Bio-Test Labs., Inc.*, 454 F. Supp. 807, 812 (S.D.N.Y. 1978)); *see also In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 806 (N.D. Ohio 1999) (consolidating multiple class actions that allege essentially similar, but not identical, securities claims). "Significantly, the existence of slight differences in class periods, parties, or damages among the suits does not necessarily defeat consolidation where the essential claims and factual allegations are similar." *In re*

Case 1:19-cv-00098-ER   Document 89   Filed 01/02/19   Page 11 of 17

Case No. 18-cv-60075-BLOOM/Valle

*MicroStrategy Inc. Secs. Litigation*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) (citing *In re Cendant Corp. Litig.*, 182 F.R.D. 476, 479 (D.N.J. 1998); *Werner*, 797 F. Supp. at 1211).

Lastly, the Court rejects the McIntire Plaintiffs' arguments that "the discovery involved in this proceeding will, accordingly, be far more extensive than that needed by the initial Gingello complaint. The legal theories alleged in the Complaint are also far more comprehensive and developed than those alleged in the Gingello complaint and include allegations under the Securities Act that are entirely absent from Gingello." The Court notes that this argument is inconsistent with the representations made to the United States Judicial Panel on Multidistrict Litigation in the JPML Motion. *See In re Patriot National, Inc., Securities Litigation*, MDL No. 2870, ECF No. [56-1] (". . . the various complaints present common factual allegations that will likely require duplicative motion practice and, if motions to dismiss are denied, discovery. Here, the four complaints raise similar factual and legal issues . . . proof of these allegations will involve the same evidence and testimony from the same witnesses."). Accordingly, the Court finds that Intervenors have proffered a compelling showing that they have an interest related to the property or transaction that is the subject of the present action.

Intervenors also argue that they "are so situated that disposition of this action, as a practical matter, may impair or impede their ability to protect that interest."  ECF No. [50], at 11.  The Intervenors claims that the disposition of the McIntire Action will affect the funds available to compensate shareholders, would create undue burdens and cost for the Defendants, and may create conflicting opinions and findings. *Id.* Further, the Intervenors argue that if the actions are not consolidated, the "plaintiff class would be vulnerable to conflicting legal and factual findings in two different District Courts," and the continued separate prosecution of the McIntire Action "would jeopardize the proposed class settlement with the D&O Defendants." *Id.*

The McIntire Plaintiffs do not challenge this position in their Opposition. *See generally* ECF No. [59]. Accordingly, the Court agrees with the Intervenors that the disposition of the present action may impair or impede their ability to protect their interests, especially in light of the settlement status in the Gingello Action.

Next, Intervenors argue that the McIntire Plaintiffs and their counsel inadequately represent the investors' interests relating to the property or transaction that is the subject of the action. This is because the district court in the Southern District of New York has already determined that the Intervenors are the most capable of adequately representing the interests of class members *over the McIntire Plaintiffs' objection*. ECF No. [60], at 5-6. Intervenors argue that "by definition [] McIntire and Wasik cannot provide the best representation and therefore do not adequately represent those interests." ECF No. [60], at 6. And further that the filing of the instant action, was an "attempted end-run around the PSLRA lead plaintiff process" because the McIntire Plaintiffs "had the opportunity to move for appointment as lead plaintiff and lead counsel in the Gingello Action." ECF No. [50], at 12. In their Opposition, the McIntire Plaintiffs argue that this assertion is "simply untrue," and that neither of the McIntire Plaintiffs had an opportunity to move for the appointment for lead plaintiff and lead counsel in the Gingello Action because neither plaintiff purchased Patriot National shares during the class period asserted by the Gingello Action, and therefore they were ineligible to move for appointment of lead counsel. ECF No. [59], at 7. In their Reply, the Intervenors respond that the McIntire Plaintiffs could have attempted to participate in the Gingello Action by filing an additional complaint and then moving for lead plaintiff appointment and consolidation, but chose not to take such action. ECF No. [60], at 8.

The Court is unpersuaded by the McIntire Plaintiffs' assertions that it was powerless to participate in the lead plaintiff process in the Gingello Action. Indeed, the McIntire Plaintiffs were not "deliberately excluded" nor prevented from filing an action in the Southern District of New York, but apparently chose not to. Further, "[t]he Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that within 90 days after publication of notice, the court must consider any motion made by a class member and appoint as Lead Plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of the class members." *Miller v. Dyadic Int'l, Inc.*, No. 07-80948CIV, 2007 WL 4754041, at *2 (S.D. Fla. Dec. 14, 2007); 15 U.S.C. § 78u-4(a)(3)(B)(i). The intent of the PSLRA was "to have lead plaintiffs appointed as soon as practicable" and avoid the potential indefinite delay caused by later-filed complaints. *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 503 (S.D. Fla. 2003) ("It is widely recognized that the intent of the PSLRA is "to have the 'most adequate lead plaintiffs' appointed as soon as practicable in the litigation"); *see also In re Sunbeam Sec. Litig.*, No. 98-8258-CIV, 1998 WL 1990884, at *2 (S.D. Fla. Dec. 4, 1998) (recognizing that the PSLRA intended to have the "most adequate lead plaintiffs" appointed as soon as practicable in the litigation.).

Here, the Southern District of New York has already appointed the Intervenors as the Co-Lead Plaintiffs in the Gingello Action, and has determined that they are the most capable of adequately representing the interest of the class members. Denying the Intervenors' Motion would undermine the lead plaintiff process. Moreover, having both cases proceed would promote dueling plaintiff counsel interests in different districts and would circumvent the

13

protections instituted by the PSLRA. Therefore, the Court agrees with the Intervenors that their interests would be inadequately represented in the instant action.

Accordingly, the Court finds that all required conditions have been met for the Intervenors to intervene in this action as of right pursuant to Fed. R. Civ. P. 24(a).

### b. *Permissive Intervention*

By contrast, to permissibly intervene, the intervenor must show that "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." *Chiles,* 865 F.2d at 1213.

"The 'claim or defense' portion of the rule has been construed liberally, and indeed the Supreme Court has said that it 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'" *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975) (quoting *Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940)). The intervening party, however, "must demonstrate more than a general interest in the subject matter of the litigation before intervention should be allowed." *Alexander v. Hall*, 64 F.R.D. 152, 157 (D.S.C. 1974). In exercising its discretion, a district court "can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying" a motion to intervene**.** *Daggett*, 172 F.3d at 113.

The Court also finds that the Intervenors have also met their burden to demonstrate permissive intervention, and would also permit them to intervene on this basis. As essentially conceded by the McIntire Plaintiffs in their JPML Motion, the legal and factual commonalities between the two actions are undeniable. Further, the lack of prejudice to the existing parties is a factor that weighs in favor of permissive intervention. *See Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005) ("Permissive intervention under Fed. R. Civ.

14

Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties."). The Intervenors have represented that they would act expeditiously in including the McIntire Plaintiffs' interests should the Court grant their Motion. Therefore, there will be no delay in the adjudication of the rights of the parties, and the Court has no reason to believe otherwise. *See generally* ECF No. [50], at 16.

### c. Transfer Under § 1404(a)

The Intervenors also request that the instant action be transferred pursuant to 28 U.S.C. § 1404(a). ECF No. [50], at 16. A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which states "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The standard for transfer under 28 U.S.C. § 1404(a) leaves much to the broad discretion of the trial court." *Gonzalez v. Pirelli Tire, LLC*, No. 07-80453-CIV, 2008 WL 516847, at *1 (S.D. Fla. Feb. 22, 2008). Congress authorized courts to transfer the venue of a case in order to avoid unnecessary inconvenience to litigants, witnesses, and the public and to conserve time, energy, and money. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The Court has broad discretion under 28 U.S.C.§ 1404(a) to transfer any civil action to another federal district court for the convenience of the parties and witnesses, and in the interest of justice.

Here, the transfer of the above-styled action satisfies "the policy of statutory transfer, which is to avoid duplicative litigation, inconvenience, and unnecessary expenses." *Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1303 (S.D. Fla. 2002). As represented by the McIntire Plaintiffs in their JPML Motion, the McIntire Action and the consolidated Gingello

15

Action have "common factual allegations . . . [and the] complaints raise similar factual and legal issues . . . contain allegations regarding the operation of Patriot National during 2016 and 2017." *See In re Patriot National, Inc., Securities Litigation*, MDL No. 2870, ECF No. [56-1]. Further, "[p]roof of these allegations will involve the same evidence and testimony from the same witnesses." *Id.* Accordingly, the legal and factual commonalities in the McIntire Action substantially intertwine and overlap in many key respects with the Gingello Action. Both cases allege claims under Sections 10(b) and 20(a) of the Exchange Act, and allege the same core legal theory—that the Patriot National's Board was operating Patriot National for the benefit of Defendant Mariano, rather than for the benefit of its shareholders. To allow this case and the case first-filed in the Southern District of New York to proceed simultaneously would contravene the policy of statutory transfer, which is to avoid duplicative litigation, inconvenience, and unnecessary expenses.

The Supreme Court has held that "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Ferens v. John Deere Co.*, 494 U.S. 516, 531, 110 S. Ct. 1274, 1284, 108 L.Ed. 2d 443 (1990) (internal citation omitted). There is an identical factual nexus as to parties situated in both the McIntire Action and the Gingello Action. If the issues in this case were to be litigated in two separate courts, there would be an unnecessary waste of time, energy, and money. *See Van Dusen*, 376 U.S. at 615 (noting the purpose of section 1404 is to avoid unnecessary waste).

Given the substantial concerns with the same issues, facts and parties simultaneously pending before two district courts, the Court will exercise its broad discretion and transfer the instant action to the Southern District of New York.

Case No. 18-cv-60075-BLOOM/Valle

IV. **CONCLUSION**

The Court finds that all required conditions have been met for ODS Capital LLC, Barry A. Smith, and Sunil Shah to intervene in this action pursuant to Fed. R. Civ. P. 24(a) and 24(b), and that transfer of this action is further warranted pursuant to 28 U.S.C. § 1404(a). Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion to Intervene and Transfer, **ECF No. [50]**, is **GRANTED**. The Clerk of Court is hereby directed to **TRANSFER** this case to the United States District Court for the Southern District of New York.

2. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED.**

3. The Clerk of the Court is further directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 28th day of December, 2018.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record